Carol GRUBER

v.

UNUM LIFE INSURANCE COMPANY
OF AMERICA

No. CIV.A.WMN–00–42.

United States District Court,
D. Maryland.

March 11, 2002.

Sandra B. Minton, Nead, Karey & Minton, Baltimore, MD, for Plaintiff.

John Snowden Stanley, Jr., Jennifer T. Timian, Semmes Bowen and Semmes PC, Baltimore, MD, for Defendant.

## *MEMORANDUM*

NICKERSON, District Judge.

Before the Court are Defendant's Motion for Summary Judgment (Paper No. 25) and Plaintiff's Motion for Summary Judgment (Paper No. 37). The motions have been fully briefed and are ripe for decision. Upon review of the pleadings and applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that Defendant's motion is granted in part and denied in part, and Plaintiff's motion is granted in part and denied in part.[1]

---

1. Also before the Court is Plaintiff's Motion to Strike or Reconsider an order of this Court denying Plaintiff's demand for a jury trial on

## I. BACKGROUND

In August of 1993, Plaintiff was hired as a psychiatric nurse at Union Memorial Hospital. As a hospital employee, Plaintiff enrolled in a disability benefits plan ("the Plan") administered by Defendant. On November 8, 1994, Plaintiff submitted a claim to UNUM, stating that she had not been able to work since October 4, 1994, due to a disability. Def.'s Exh. B.

Early in January, 1995, UNUM notified Plaintiff that her claim had been accepted and that she would receive $2,208.96 per month beginning January 3, 1995. Def.'s Exh. C. The letter also instructed Plaintiff to inform UNUM if she were to receive benefits from the Social Security Administration or Worker's Compensation, as her disability benefits would be reduced by any such amount. Id.

A few days later, Defendant sent Plaintiff another letter, clarifying that her disability had been classified as a "disability due to mental illness," and that as such, Plaintiff's benefits were subject to the Plan's 24–month maximum for monthly benefit payments.[2] Def.'s Exh. D. The letter included a lengthy quotation of the Plan's 24–month limitation for mental disabilities (as opposed to medical disabilities, which are not subject to the limitation), as well as the exceptions thereto (e.g. confinement in a hospital or institution). Id.

The administrative record submitted by Defendant contains, inter alia, numerous reports from physicians and psychologists who examined Plaintiff and diagnosed her condition. Plaintiff's medical history denotes that she had been diagnosed with lupus many years earlier, and that in 1992 she had suffered a violent attack by a psychiatric patient at another hospital

where she had worked as a nurse. In the Physician's Statement submitted with Plaintiff's original claim for benefits in 1994, Plaintiff's psychologist describes Plaintiff's symptoms as including "melancholia, suicide ideation, depression, [and] stress." Admin. Record at 0372. The psychologist also noted Plaintiff's history of lupus, and stated that she had been referred to an internist and rheumatologist. Id. The same psychologist later responded to a UNUM questionnaire, in which he noted that the "causation or precipitating factors" leading to Plaintiff's psychological symptoms were: "history of lupus, aggravated by stress, neck injury, low immunity." Admin. Record at 0233. An April, 1995, report from Plaintiff's rheumatologist diagnosed Plaintiff with lupus, fatigue, and depression. Id. at 0201. A July, 1996 report diagnosed Plaintiff with "lupus, arthralgias, headaches, spine, depression, and fatigue;" a secondary condition of "depression" was also identified. Id. at 0077.

Internal UNUM staff notes and memoranda throughout the administrative record identify Plaintiff's disability only as major depression, depression, or depression and post-traumatic stress disorder. See, e.g., Admin. Record at 0183, 0038, 0029. At no time does UNUM categorize Plaintiff's disability as "medical."

The record also reflects that Plaintiff collected benefits from both the Worker's Compensation Commission (WCC) and the Social Security Administration (SSA). In 1992 and 1993, Plaintiff had collected temporary total disability benefits from WCC for injuries caused by the patient who had attacked her. On March 22, 1996, WCC held a hearing and determined that Plain-

---

her state law claims. Paper No. 34. Having found that Plaintiff's state law claims must be dismissed, see infra, the Court will deny Plaintiff's motion as moot.

**2.** Plaintiff's UNUM policy defines "mental illness" as "mental, nervous, or emotional diseases or disorders of any type." Plan documents at L–BEN–6 (Admin. Record at 0398).

tiff was also entitled to 140 weeks of "permanent partial" disability payments, retroactive to August 15, 1993, for neck injuries and headaches caused by the same incident. Pl.'s Exh. B. The Social Security Administration also found Plaintiff entitled to benefits as of September 26, 1994. Pl.'s Exh. OO. Plaintiff informed UNUM of both sources of benefits.

On July 3, 1996, UNUM wrote Plaintiff, acknowledging her success in obtaining WCC and SSA benefits, and informing her that as a result, her disability claim with UNUM was now overpaid in the amount of $15,480.47.[3] Admin. Record at 0087. The letter stated that "[t]he disability policy under which you receive disability benefits provides for a reduction of your monthly benefit by any Social Security disability benefits and Worker's Compensation paid for that same period." *Id.* The letter does *not* include the Plan's definition of "other income benefits," which "must be payable as a result of the *same disability* for which this policy pays a benefit." UNUM Plan documents at L–BEN–3 (Pl.'s Exh. JJ) (emphasis added).

On January 7, 1997, Plaintiff was notified that her disability benefits had been terminated pursuant to the Plan's 24–month maximum for disability benefits. Admin. Record at 0074. The letter stated that Plaintiff could have the decision reviewed if she made a request in writing within 60 days, but that if she failed to do so, "our claims decision will be final." Def.'s Exh. H. Plaintiff concedes that she did not personally initiate the review process with UNUM, but instead immediately took the letter to her attorney. *See,* Pl.'s Exh. HH. Plaintiff's attorney did not contact UNUM until June 13, 1997. See,

Def.'s Exh. I. UNUM denied the request for review. Def.'s Exh. J.

Plaintiff filed this action in the Circuit Court for Baltimore City in December, 1999, and Defendant removed to this Court. The crux of Plaintiff's position is that UNUM wrongfully applied the 24–month limitation for mental disability to her claim, and that UNUM should not have reduced her benefits by the amount of her WCC and SSA awards. Specifically, Plaintiff alleges a violation of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132 (Count I), breach of contract (Count II), and breach of fiduciary duty (Count III). Defendant has asserted a counterclaim, seeking the amount of benefits that Defendant allegedly overpaid Plaintiff based on her receipt of SSA and WCC benefits. Both parties have moved for summary judgment.

## II. SUMMARY JUDGMENT STANDARD

A moving party is entitled to summary judgment only if it can show that there exists no genuine issue as to any material fact, and that it is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Blue Ridge Ins. Co. v. Puig,* 64 F.Supp.2d 514 (D.Md.1999) (citing, *inter alia, Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

When both parties file motions for summary judgment, the court applies the same standards of review. *Taft Broadcasting Co. v. United States,* 929 F.2d 240, 248 (6th Cir.1991); *ITCO Corp. v. Michelin Tire Corp.,* 722 F.2d 42, 45 n. 3 (4th Cir.1983) ("The court is not permitted to resolve genuine issues of material facts on a motion for summary judgment—even where

---

**3.** From September to December, 1996, UNUM reduced Plaintiff's benefit payments to $0, and applied the $3,051.84 to the alleged overpayment. See, Letter from Linda Nee to Carol Vardo, September 17, 1996 (Admin. Record at 0075); see also Admin. Record at 0007.

... both parties have filed cross motions for summary judgment") (emphasis omitted), *cert. denied,* 469 U.S. 1215, 105 S.Ct. 1191, 84 L.Ed.2d 337 (1985). The role of the court is to "rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." *Towne Mgmt. Corp. v. Hartford Acc. and Indem. Co.,* 627 F.Supp. 170, 172 (D.Md.1985) (quoting Wright, Miller & Kane, *Federal Practice and Procedure: Civil* 2d § 2720 (2d ed.1993)).

## III. DISCUSSION

### A. Administrative Exhaustion Under ERISA

Although ERISA does not contain an explicit exhaustion requirement, courts have generally required claimants to exhaust the remedies provided by their benefit plans as a prerequisite to filing an ERISA action. *See, Makar v. Health Care Corp. of Mid–Atlantic (Carefirst),* 872 F.2d 80, 83 (4th Cir.1989). In so finding, courts cite the "firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases." *Alfarone v. Bernie Wolff Construction Corp.,* 788 F.2d 76, 79 (2nd Cir.1986), *cert. denied,* 479 U.S. 915, 107 S.Ct. 316, 93 L.Ed.2d 289 (1986). Behind this policy is a congressional intent that plan fiduciaries, not federal courts, have primary responsibility for claims processing. *See, Kross v. Western Elec. Co.,* 701 F.2d 1238, 1244 (7th Cir.1983). The federal regulations designed to implement ERISA authorize benefits plans to require participants to appeal denials of claims within a limited time period of no less than 60 days. 29 C.F.R. § 2560.503–1(g)(3).

Plaintiff concedes that she did not appeal the denial of her benefits within 60 days after receiving UNUM's notification. Plaintiff argues that she should not be barred by the administrative exhaustion requirement for three reasons: one, any delay was caused by her attorney and was no fault of her own; two, UNUM's denial letter failed to provide an adequate basis for termination of benefits, and thus the appeals period was never triggered; and three, Plaintiff's failure to appeal should be excused for futility. The Court will address Plaintiff's arguments, *seriatim.*

■ Lack of diligence by a party's attorney is not sufficient to justify equitable tolling of a statute of limitations or similar time-sensitive rule. *See, Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). Plaintiff's attorney, whose letterhead indicates that he works in a firm with several other lawyers, claims that he was over four months late in submitting Plaintiff's appeal due to his illness and hospitalization. Admin. Record at 0027. This "is at best a garden variety claim of excusable neglect" and cannot justify excusing such a delay. *Irwin* at 96, 111 S.Ct. 453.

■ Under ERISA, benefit plans must provide adequate, written notice of specific reasons for a denial of benefits, and must afford participants a reasonable opportunity for a "full and fair review" of the decision. *Makar,* 872 F.2d at 83 (citing 29 U.S.C. § 1133; 29 C.F.R. § 2560.503–1 (1987)). Plaintiff argues that the January 7, 1995 letter she received from UNUM failed to provide such notice. The letter explains that, "[t]he policy under which we have been providing benefits has a limitation that is described in the attached policy provision. As your claim falls under this limitation and 24 months of benefits have now been provided, we must deny any further benefits and close your claim." Admin. Record at 0074. Although the letter contains no detailed description of how the "mental disability" determination was made, it does provide Plaintiff with the specific reason why her

benefits are terminated. Furthermore, the letter explains the right to a review of the decision, clearly sets forth the procedures and time limit for obtaining a review, and informs the reader of her right to "request copies of pertinent documents contained in your file." *Id.* The Court finds that although the denial letter could have provided more detailed information, it meets the notice requirements set forth by ERISA and federal regulations.

█ Finally, Plaintiff claims that because UNUM had rebuffed her earlier attempts to obtain a "medical" rather than "mental" classification of her disability, she "had no reason to believe that anyone or anything was going to change the decision that UNUM had made ...". Pl.'s Brief at 29. In support of this argument, Plaintiff offers only her testimony and entries in the administrative record showing that she inquired about changing her classification to a medical disability on a few occasions. One UNUM staff member responded to Plaintiff's inquiry by requesting "very detailed" information from Plaintiff's psychologist and asking Plaintiff to provide more information about her lupus; however, the staff member also noted in an internal memorandum that "I feel this claim will remain [mental disability]." Admin. Record. at 0029.

█ Exhaustion requirements will be excused only when a party makes a "clear and positive" showing of the futility of pursuing administrative remedies. *See, Makar,* 872 F.2d at 83 (citing *Fizer v. Safeway Stores, Inc.,* 586 F.2d 182, 183 (10th Cir.1978)). Plaintiff's case does not rise to this standard, and is clearly distinguishable from a recent decision by one of our sister courts finding that futility exist-

ed. In that case, the plaintiff did not pursue administrative review because she had been told by plan administrators that they would not consider any appeal, that their decision was "final and irrevocable," and that her requests for copies of documents in her file would not be fulfilled. *Nessell v. Crown Life Ins. Co.,* 92 F.Supp.2d 523 (E.D.Va.2000). Here, Plaintiff has shown that her earlier informal attempts to change her classification had been unsuccessful and probably frustrating, but has offered no evidence that a formal review process would not have yielded a different result.

█ Having found that Plaintiff's failure to exhaust her administrative remedies cannot be excused, the Court will not reach the merits of Plaintiff's claim that her disability was improperly classified as a mental disability.[4]

### B. Plaintiff's State Law Claims

█ Count II of Plaintiff's amended complaint asserts a breach of contract claim arising out of UNUM's withholding of benefits based on Plaintiff's WWC and SSA awards. It is well-settled, however, that causes of action seeking recovery of benefits under employee benefit plans, based upon state law, are preempted by ERISA. *See, e.g., Metropolitan Life Ins. Co. v. Pettit,* 164 F.3d 857, 861 (4th Cir. 1998); *Stiltner v. Beretta U.S.A. Corp.,* 74 F.3d 1473, 1480 (4th Cir.1996), *cert. denied,* 519 U.S. 810, 117 S.Ct. 54, 136 L.Ed.2d 18 (1996). Plaintiff's breach of contract claim is not immune from ERISA's broad preemptive force, and accordingly, Count II must be dismissed.

---

4. This finding does not preclude the Court from considering Plaintiff's claim for benefits reduced or withheld by UNUM based on Plaintiff's WCC and SSA awards. That issue was not addressed in Plaintiff's termination-

of-benefits letter, nor was Plaintiff ever given an opportunity to seek administrative review of UNUM's determination of benefit reduction.

Plaintiff has also brought a claim seeking damages for Defendant's alleged breach of fiduciary duty.[5] Under ERISA, a plan beneficiary may sue for breach of fiduciary duty only to remedy injuries to the plan as a whole, rather than to an individual beneficiary. *See,* 29 U.S.C. § 1132(a)(2); *Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 140–41, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985); *see also Edmonds v. Hughes Aircraft Co.,* 145 F.3d 1324, 1998 WL 228200 (4th Cir.1998) (unpublished opinion). A beneficiary may sue for individual equitable relief only when another cause of action, such as § 1132(a)(2), is not available to the plaintiff. *Varity Corp. v. Howe,* 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). Here, because Plaintiff seeks individual damages and has also brought a claim under § 1132(a)(2), her independent claim for breach of fiduciary duty cannot stand.

### C. Defendant's Counterclaim for Alleged Overpayment

Defendant's claim for the alleged overpayment of $12,428.63 to Plaintiff turns on the interpretation of a provision contained in Plaintiff's disability policy, *i.e.,* whether Plaintiff's SSA and WCC benefits were "payable as a result of the *same disability* for which [her] policy pays a benefit." Plan document at L–BEN–3 (Admin. Record at 0395).[6] Only then can UNUM rightfully deduct those benefits from its monthly disability payments to Plaintiff.

As evidenced by UNUM's administrative record, Plaintiff's disability was at all times classified by UNUM as major depression or depression, and occasionally as depression and post-traumatic stress disorder. *See, e.g.,* Admin. Record at 0029, 0042, 0044, 0111, 0174, 0183, 0184. At no time did UNUM find Plaintiff disabled due to her lupus, arthritis, headaches, neck injury, or any of the other physical (as opposed to mental) ailments documented by her physicians. When Plaintiff's psychologist wrote UNUM in September, 1995, urging them to refer Plaintiff to a neurologist due to "frequent and severe headaches," nothing in the record suggests that UNUM followed up on this potentially disabling medical condition. Admin. Record at 0122 (Letter of Dr. Steven Zimmerman).

The documents describing Plaintiff's awards by the SSA and WCC reveal a very different analysis of Plaintiff's disability. The report from the WCC hearing held on March 22, 1996, states that "[t]he Commission finds that the disability to the claimant's neck and headaches are causally related to the accidental injury [that Plaintiff sustained in 1992 and for which she had previously been awarded WCC benefits during 1993]." Admin. Record at 0096. Although the report notes that Plaintiff also has some impairments due to "psychological condition," there is no indication that the WCC award was intended to compensate for anything other than headaches and neck injuries. *Id.*

In its report determining that Plaintiff was entitled to SSA benefits as of September, 1994, the Administrative Law Judge found that Plaintiff's impairments include

---

5. To the extent that Count III alleges a claim under state law, it too is preempted by ERISA. Because the amended complaint does not make clear the legal basis for Count III, the Court will treat it as a breach of fiduciary claim pursuant to ERISA § 502(a)(2).

6. The Court notes with disapproval that this crucial provision went unmentioned in UNUM's letters to Plaintiff and her attorney regarding reduction of her benefits, as well as in UNUM's motion for summary judgment, where UNUM states only that Plaintiff was "simultaneously" receiving SSA and WCC benefits, meriting a reduction.

the following: "systemic lupus erythematosus with headaches, residual effects from a neck injury with shoulder pain and headaches, post-traumatic stress disorder and depression, and arthritis." Pl.'s Exh. OO. Attached to the report, after a lengthy recounting of Plaintiff's medical history and diagnoses, is a "psychiatric review technique form," also signed by the A.L.J., finding that Plaintiff suffered from depressive syndrome, major depression, and an anxiety disorder. *Id.*

Interpretation of the terms of an ERISA plan is governed by federal common law. *See, Todd v. AIG Life Ins. Co.*, 47 F.3d 1448, 1451 (5th Cir.1995). Any alleged ambiguities in the plan should be reconciled, if possible, by giving the plan's language its ordinary meaning. *See, Glocker v. W.R. Grace & Co.*, 974 F.2d 540, 544 (4th Cir.1992). If ambiguities remain, the plan should be construed against the insurer, in favor of the insured. *Id. See also, Todd*, 47 F.3d at 1451–52 (citing other circuits applying this rule in the ERISA context).

UNUM's plan documents do not provide any further definition of "payable for the same disability." According to Defendant, all of Plaintiff's benefits were for the "same disability" because both the SSA and WCC "reflect consideration and inclusion" of Plaintiff's depression and/or post-traumatic stress disorder in making their awards. Def.'s Opp. at 11–12. It seems clear, however, that the WCC award was only intended to be "payable for" Plaintiff's neck injuries and headaches caused by her 1992 attack. As for the SSA award, depression and post-traumatic stress disorder are indeed listed as impairments, but only after SSA lists Plaintiff's medical conditions related to her lupus and 1992 physical injuries-medical disabilities disregarded by UNUM in its determination of Plaintiff's disability.

Therefore, the Court finds that Plaintiff's WCC benefits were not payable for the same disability as UNUM, and that it is ambiguous whether SSA's inclusion of depression and post-traumatic stress disorder as non-primary impairments means that the SSA benefits were payable for the same disability. Accordingly, the ambiguity must be resolved in favor of Plaintiff, *see Glocker* at 544, and Defendant will be ordered to pay Plaintiff the $3,051.84 withheld by UNUM in September, 1996. The Court also has discretion to award prejudgment interest on that amount, which will be granted at the rate of 6%. *See, Quesinberry v. Life Ins. Co. of North America*, 987 F.2d 1017, 1030–31 (4th Cir. 1993) (ERISA permits award of prejudgment interest in the district court's discretion); *E.E.O.C. v. Liggett & Myers, Inc.*, 690 F.2d 1072, 1074 (4th Cir.1982) (rate of interest within the court's discretion); *Federal Savings and Loan Insurance Corp. v. Quality Inns, Inc.*, 876 F.2d 353, 359 (4th Cir.1989) (observing that Maryland's legal rate of prejudgment interest is 6%).

### D. Attorney's Fees

Plaintiff has requested that the Court award her attorney's fees, along with other relief. ERISA gives federal district courts discretion to award reasonable attorney's fees and costs. 29 U.S.C. § 1132(g). In order to recover fees, Plaintiff would need to demonstrate that she was the prevailing party. *See, Martin v. Blue Cross & Blue Shield*, 115 F.3d 1201, 1210 (4th Cir.1997); *Quesinberry*, 987 F.2d at 1028. This Court has determined that Plaintiff should prevail only as to her claim for benefits withheld by UNUM for alleged overpayment, a claim which contains some degree of ambiguity and which amounts to a small fraction of the relief Plaintiff requested. Plaintiff has not prevailed on the majority of her claims, how-

ever, and the Court will not exercise its discretion to award attorney's fees in this matter.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment will be granted as to Counts II and III, and as to the claim in Count I regarding the classification of Plaintiff's disability. Defendant's motion will be denied as to Defendant's counterclaim, and as to the claim in Count I regarding Plaintiff's claim for benefits withheld by UNUM for alleged overpayment. Plaintiff's Motion for Summary Judgment will be granted as to the claim in Count I regarding Plaintiff's claim for benefits withheld by UNUM for alleged overpayment, and as to Defendant's counterclaim. A separate order consistent with this memorandum will issue.

### ORDER

Pursuant to the foregoing memorandum, and for the reasons stated therein, IT IS this day of March, 2002, by the United States District Court for the District of Maryland, hereby ORDERED:

1. That Defendant's Motion for Summary Judgment (Paper No. 25) is hereby GRANTED in part and DENIED in part, in that the motion is GRANTED as to Count II and Count III, and GRANTED as to the claim in Count I regarding classification of Plaintiff's disability, but DENIED as to all other claims;

2. That Plaintiff's Motion for Summary Judgment (Paper No. 37) is hereby GRANTED in part and DENIED in part, in that the motion is GRANTED as to the claim in Count I for benefits withheld by Defendant for alleged overpayment, and GRANTED as to Defendant's counterclaim, but DENIED as to all other claims;

3. That Defendant shall pay Plaintiff the amount of $3,051.84, plus pre-judgment interest at a rate of 6% per annum, from the date of September 1, 1996, when the amount was withheld by Defendant, to the date of this Order;

4. That this case is hereby CLOSED;

5. That any and all prior rulings made by this Court disposing of any claims against any parties are incorporated by reference herein and this order shall be deemed to be a final judgment within the meaning of Fed.R.Civ.P. 58;

6. That the Clerk of the Court shall mail or transmit copies of the foregoing memorandum and this order to all counsel of record.