IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

NOV 9 2007

COURT OF APPEALS
DIVISION TWO



| | | |
|---|---|---|
| BRYSTAL McCLOUD, an individual, | ) | |
| | ) | 2 CA-CV 2007-0006 |
| Plaintiff/Appellant, | ) | DEPARTMENT A |
| | ) | |
| v. | ) | **O P I N I O N** |
| | ) | |
| STATE OF ARIZONA, ARIZONA | ) | |
| DEPARTMENT OF PUBLIC SAFETY, a | ) | |
| political subdivision of the State of | ) | |
| Arizona; and THOMAS MAX KIMBRO, | ) | |
| an individual, | ) | |
| | ) | |
| Defendants/Appellees. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF COCHISE COUNTY

Cause No. CV200600469

Honorable Stephen M. Desens, Judge

AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED WITH DIRECTIONS

---

| | |
|---|---|
| Stephen Gorey | Tucson |
| | Attorney for Plaintiff/Appellant |
| | |
| Terry Goddard, Arizona Attorney General | |
| By Bruce L. Skolnik | Tucson |
| | Attorneys for Defendants/Appellees |

---

B R A M M E R, Judge.

¶1        Appellant Brystal McCloud appeals from the trial court's dismissal of her personal injury complaint against appellees Thomas Kimbro and the State of Arizona. She contends the trial court erred "in failing to equitably toll the one year statute of limitations governing claims against governmental bodies." Alternatively, she asserts that a question of fact existed as to whether Kimbro was acting within the course and scope of his employment when the vehicle he was driving struck her car, and, if he was not, her negligence claim was governed by a two-year statute of limitations. We affirm in part, reverse in part, and remand the case to the trial court for further proceedings.

**Factual and Procedural Background**

¶2        The facts are essentially undisputed. Thomas Kimbro, a Department of Public Safety (DPS) officer, was searching for a restaurant on April 1, 2005, when his state-owned vehicle collided with the back of McCloud's vehicle. McCloud suffered injuries, incurred medical expenses, and lost earnings. Four days later, McCloud filed an administrative claim pursuant to A.R.S. § 12-821.01 against the State of Arizona, the Department of Public Safety, and Kimbro, but did not file the lawsuit against them until June 27, 2006.

¶3        Kimbro and the state moved to dismiss the complaint pursuant to Rule 12(b)(6), Ariz. R. Civ P., asserting McCloud's claim was barred because she had filed her complaint more than one year after the accident had occurred, the limitations period applicable to claims against a public entity or employee. *See* A.R.S. § 12-821. In response, McCloud argued the late filing of the complaint had been the result of "excusable neglect" and therefore the "statute of limitations should be equitably tolled."

2

¶4     McCloud stated in her response that "a truly bizarre and unusual set of circumstances [had] converged to prevent plaintiff's counsel from being able to concentrate on his work and resulted in the untimely filing." McCloud's counsel filed an affidavit stating that his sister, who had cared for their mother and brother, both of whom were disabled, had died in November 2005. Consequently, counsel had to make arrangements for his mother and brother to live at a facility. Counsel's wife, who was his secretary before she became disabled due to a heart condition, underwent open heart surgery. In February and March 2006, counsel underwent separate surgical procedures on both of his knees and subsequently was placed on pain medication and sleeping pills. Counsel's mother died unexpectedly in March, and counsel underwent gall bladder surgery later that month, which, according to counsel, was one day before the one-year limitations period applicable to McCloud's claim was to expire. Counsel was in bed on pain medication the day the limitations period expired. Counsel attached to his affidavit, which was filed with his response to the motion to dismiss, death certificates for his mother and sister, as well as doctors' and pharmacies' reports.

¶5     During this series of family health issues, in November 2005 counsel found a second attorney "to assist [him] by handling some of the day to day requirements of most of [his] files." This lawyer "was not a personal injury attorney" and counsel stated he "would guide him through the process," not expecting him "to learn the various statute of limitation requirements on his own." This backup attorney and his family were diagnosed with tuberculosis in November 2005, and he took an "extended leave of absence from [his]

law practice beginning in February 2006." Although the backup attorney was judicially excused from meeting time requirements in his own cases, he did not inform counsel of this fact, nor did he do anything to seek relief from the court in McCloud's case. McCloud's counsel "did not ask [the backup attorney] to file the complaint" before the one-year limitations period expired "[d]ue to [counsel's] inability to concentrate on [his] work during this time."

¶6 In reply to McCloud's response to the motion to dismiss, the state argued that these circumstances did not constitute excusable neglect, asserting instead that these facts amounted to "attorney malpractice," and that attorney illness is "a garden variety claim of excusable neglect" that fails as a matter of law. After a hearing, the trial court concluded "as a matter of law under the unusual facts and circumstances of this case, there is no excusable neglect," granting the state's motion to dismiss. This appeal followed.

**Discussion**

Equitable Tolling

¶7 McCloud contends the trial court erred in failing to equitably toll the limitations period because she was diligent in pursuing her remedies, the delay in no way caused the state prejudice, and the "concurrent illnesses of plaintiff's attorney and [the] backup attorney . . . remove the case from the category of 'garden variety excusable neglect.'" Section 12-821 states: "All actions against any public entity or public employee shall be brought within one year after the cause of action accrues and not afterward." Although McCloud timely filed her notice of claim pursuant to § 12-821.01 four days after

4

the accident, and nearly six months before it was due, her complaint was not filed until nearly three months after it was due.

¶8 "The affirmative defense of statute of limitations is properly raised in a motion to dismiss where it appears from the face of the complaint that the claim is barred." *Anson v. Am. Motors Corp.*, 155 Ariz. 420, 421, 747 P.2d 581, 582 (App. 1987). The party opposing a motion to dismiss based on a statute of limitations defense "bears the burden of proving the statute has been tolled." *Id.*; *see also Baden-Winterwood v. Life Time Fitness*, 484 F. Supp. 2d 822, 826 (S.D. Ohio 2007) ("It is the plaintiff's burden to demonstrate why he or she is entitled to equitable tolling of the statute of limitations.").

¶9 Although the state moved to dismiss pursuant to Rule 12(b)(6), Ariz. R. Civ. P., the trial court considered matters outside the pleadings. Thus, normally, we would review the trial court's ruling as a grant of a motion for summary judgment. Ariz. R. Civ. P. 12(b); *see also James v. State*, 215 Ariz. 182, ¶ 5, 158 P.3d 905, 907 (App. 2007). We conclude, however, that whether to apply equitable tolling is a question the trial court, not the jury, should determine. *Cf. Smith-Haynie v. Dist. of Columbia*, 155 F.3d 575, 579 (D.C. Cir. 1998) ("[E]quitable tolling and estoppel, which ask whether equity requires extending a limitations period, are for the judge to apply, using her discretion, regardless of the presence of a factual dispute."). Indeed, although we find no Arizona authority squarely addressing this issue, there is some precedent from which we can draw to sanction this procedure. *See Kosman v. State*, 199 Ariz. 184, ¶ 12, 16 P.3d 211, 214 (App. 2000) ("remand[ing] for findings" where plaintiff had raised factual questions relevant to whether

5

equitable estoppel should be applied). Similarly, the related doctrine of equitable estoppel is properly determined by the trial court. *See Nolde v. Frankie*, 192 Ariz. 276, ¶ 20, 964 P.2d 477, 482 (1988) (trial court determines whether equitable estoppel applies).[1] And, because both equitable estoppel and equitable tolling by definition sound in equity, the trial court is the fact-finder. *See City of Tucson v. Superior Court*, 165 Ariz. 236, 242 n.5, 798 P.2d 374, 380 n.5 (1990) ("Although either party to litigation in the superior court is entitled to demand a jury trial as a matter of right, whether the case falls in equity or in law, in an equity case the verdict is merely advisory.") (internal citation omitted); *Mullins v. Horne*, 120 Ariz. 587, 591, 587 P.2d 773, 777 (App. 1978) ("[I]n equity matters, the court may disregard the jury's verdict or answers to interrogatories. In such event, the court becomes the trier of all issues of fact and law."). Moreover, the facts related to the reasons for equitable tolling are frequently unrelated to the central facts relevant to the merits of the plaintiff's claim. *See Pauling v. Sec'y of Dep't of Interior*, 71 F. Supp. 2d 231, 233 (S.D.N.Y. 1999) (trial court should determine whether to apply doctrine of equitable tolling because there is no overlap of factual issues).

¶10     No Arizona case discusses the standard of review an appellate court should employ in addressing a trial court's refusal to apply the doctrine of equitable tolling. There is much disagreement among courts in other jurisdictions on this question. *See, e.g., Belot*

---

[1]"A defendant will be estopped from asserting the defense of the statute of limitations if by its conduct the defendant induces the plaintiff to forego litigation by leading plaintiff to believe a settlement or adjustment of the claim will be effected without the necessity of bringing suit." *Roer v. Buckeye Irrigation Co.*, 167 Ariz. 545, 547, 809 P.2d 970, 972 (App. 1990).

*v. Burge*, 490 F.3d 201, 205-06 (2d Cir. 2007) (discussing conflicting standards used by federal courts); *Dunlap v. United States*, 250 F.3d 1001, 1007 n.2 (6th Cir. 2001) (same). We find the reasoning of the Second Circuit in *Belot* instructive.

> [T]he appropriate standard of review depends on the aspect of the decision which is under review. A rule of law that gives the court discretion to grant an *equitable* exception in *extraordinary* circumstances seems almost inherently to invite the court's discretion in applying these standards. The balancing of factors involved in determining what result is equitable and the appraisal of whether the circumstances are sufficiently extraordinary seem to contemplate that in the same set of facts, different results could be acceptable. In such circumstances, courts often say that appellate review is for "abuse of discretion." But that label in a way obscures more than it reveals. The operative review standard in the end will depend on what aspect of the lower court's decision is challenged. If a district court denies equitable tolling on the belief that the decision was compelled by law, that the governing legal standards would not permit equitable tolling in the circumstances—that aspect of the decision should be reviewed *de novo*. If the decision to deny tolling was premised on an incorrect or inaccurate view of what the law requires, the decision should not stand. Courts generally in such circumstances state that application of an incorrect standard of law is an "abuse of discretion." Considering a second aspect, if the decision to deny tolling was premised on a factual finding, the factual finding should be reviewed for clear error. Finally, if the court has understood the governing law correctly, and has based its decision on findings of fact which were supported by the evidence, but the challenge is addressed to whether the court's decision is one of those within the range of possible permissible decisions, then appellate review will be, not only in name, but also in operation, for abuse of discretion. The reviewing court will recognize that in theory the lower court has numerous options open to it and its decision must be sustained unless the particular facts and circumstances are such as to make the particular decision an abuse of discretion. These three distinct potential aspects of a decision and the concomitant

7

types of review are collected under the label "abuse of discretion."

*Belot*, 490 F.2d at 206-07 (internal citations omitted). Moreover, a trial court's application of other forms of equitable relief is typically reviewed for an abuse of discretion. *See Flying Diamond Airpark, LLC v. Meienberg*, 215 Ariz. 44, ¶ 27, 156 P.3d 1149, 1155 (App. 2007) ("We review a trial court's decision not to apply [equitable] estoppel for an abuse of discretion."); *Kromko v. City of Tucson*, 202 Ariz. 499, ¶¶ 4, 5, 47 P.3d 1137, 1139 (App. 2002) (trial court's determination of injunctive relief and application of laches reviewed for abuse of discretion); *see also Maher v. Urman*, 211 Ariz. 543, ¶ 21, 124 P.3d 770, 777 (App. 2005) (ruling on relief for excusable neglect under Rule 60(c), Ariz. R. Civ. P., reviewed for abuse of discretion).

¶11 At oral argument before this court, the state conceded that attorney illness, under some circumstances, could warrant tolling of the statute of limitations. We agree. "Under equitable tolling, plaintiffs may sue after the statutory time period for filing a complaint has expired if they have been prevented from filing in a timely manner due to sufficiently inequitable circumstances." *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 240 (3d Cir. 1999). "It is hornbook law that limitations periods are 'customarily subject to equitable tolling.'" *Young v. United States*, 535 U.S. 43, 49, 122 S. Ct. 1036, 1040 (2002), *quoting Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95, 111 S. Ct. 453, 457 (1990) (internal quotations omitted).

¶12 Arizona courts have recognized and applied the equitable tolling doctrine. *See Hosogai v. Kadota*, 145 Ariz. 227, 229, 700 P.2d 1327, 1329 (1985) (applying doctrine

when second wrongful death claim untimely filed after successful verdict on first claim overturned on appeal due to defective service of process); *Kosman*, 199 Ariz. 184, ¶¶ 6, 10, 16 P.3d at 213 (applying doctrine where plaintiff prisoner failed to timely file notice of claim against state because he first pursued claim through prison's administrative grievance procedure); *Kyles v. Contractors/Eng'rs Supply, Inc.*, 190 Ariz. 403, 404, 406, 949 P.2d 63, 64, 66 (App. 1997) (applying doctrine when right-to-sue letter from Arizona Attorney General's office contained incorrect date by which plaintiff was required to sue on his claim).

¶13 Federal cases provide additional examples of situations in which a party might qualify for equitable tolling. *See Seitzinger*, 165 F.3d at 240 ("[E]quitable tolling may be appropriate when a claimant received inadequate notice of her right to file suit, where a motion for appointment of counsel is pending, or where the court has misled the plaintiff into believing that she had done everything required of her."). Courts have applied equitable tolling when "extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time." *Alvarez-Machain v. United States*, 107 F.3d 696, 701 (9th Cir. 1996); *see also Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000) (same). For example, courts have found extraordinary circumstances when there is a lack of clarity in the law, *Capital Tracing, Inc. v. United States*, 63 F.3d 859, 862-63 (9th Cir. 1995), or when an attorney affirmatively lied to a diligent client, *Seitzinger*, 165 F.3d at 241-42. "To establish extraordinary circumstances, a petitioner must support his allegations with

9

evidence; he cannot rely solely on personal conclusions or assessments." *Collins v. Artus*, 496 F. Supp. 2d 305, 313 (S.D.N.Y. 2007).

¶14 We are not aware of any Arizona cases that have considered whether the doctrine of equitable tolling excuses, based on an attorney's illness, the untimely filing of a complaint.[2] Many courts have taken the position that equitable tolling is not appropriate in such situations. *See, e.g., Modrowski v. Mote*, 322 F.3d 965, 968 (7th Cir. 2003) ("attorney incapacity is equivalent to attorney negligence for equitable tolling purposes" and is not grounds for equitable tolling in a habeas corpus proceeding); *Yarborough v. Burger King Corp.*, 406 F. Supp. 2d 605, 609 (M.D.N.C. 2005) (attorney's illness and hospitalization "made it more difficult for Plaintiffs to file on time, but not impossible," and there was "no evidence in the record to show that Plaintiffs made any independent effort to safeguard their right to file") (internal quotations omitted); *Gruber v. Unum Life Ins. Co. of Am.*, 195 F. Supp. 2d 711, 716 (D. Md. 2002) (attorney's illness and hospitalization "'is at best a garden variety claim of excusable neglect' and cannot justify excusing such a delay," particularly when attorney worked with other lawyers), *quoting Irwin*, 498 U.S. at

---

[2]Some Arizona cases have discussed attorney illness in the context of what constitutes excusable neglect to set aside a judgment pursuant to Rule 60(c), Ariz. R. Civ. P. *See Walker v. Kendig*, 107 Ariz. 510, 512, 489 P.2d 849, 851 (1971) ("[V]erified sudden illness usually presents exceptional circumstances under which a reasonably prudent attorney could be 'excused' from properly carrying out his practice."); *Resolution Trust Corp. v. Maricopa County*, 176 Ariz. 631, 634-35, 863 P.2d 923, 926-27 (Tax 1993) (rejecting attorney's unsubstantiated claim that Chronic Fatigue Syndrome should constitute excusable neglect when attorney's illness not sudden, attorney did not seek help, and attorney maintained social and civic commitments). However, we find these cases inapposite to the situation here.

96, 111 S. Ct. at 458. And, some courts have found that a death in the family of the attorney also is not grounds for equitable tolling. *See United States v. Marcello,* 212 F.3d 1005, 1010 (7th Cir. 2000) ("Though we sympathize with the attorney who suffered the loss of her father several weeks before the deadline, the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule.").

¶15 Courts in other jurisdictions, however, have found that an attorney's illness could support equitable tolling. *See Cantrell v. Knoxville Cmty. Dev. Corp.*, 60 F.3d 1177, 1179-80 (6th Cir. 1995) (if plaintiff "pursued his claim diligently, yet was abandoned by his attorney due to his attorney's mental illness, equitable tolling may be appropriate"); *Doherty v. Teamsters Pension Trust Fund of Phila. & Vicinity*, 16 F.3d 1386, 1394 (3d Cir. 1994) ("[S]ome mistakes in extraordinary circumstances merit forbearance, and this—a filing in the wrong forum by a lawyer and law firm under the extreme duress caused by the illness and death of the lawyer during the proceedings—may be such a mistake."); *Fogg v. Carroll*, 465 F. Supp. 2d 336, 344, 346 (D. Del. 2006) (applying doctrine where attorney filing late habeas corpus petition had "suffered at least one stroke during the course of her representation," "was undergoing medical treatment" during the relevant time period for filing, and passed away a few months after filing petition); *Lewis v. Superior Court*, 220 Cal. Rptr. 594, 595, 600 (Cal. Ct. App. 1985) (applying doctrine where attorney struck by an automobile one week before he planned to file complaint, suffering severe injuries disabling him mentally and physically).

11

¶16 Although a typical attorney illness situation might qualify as "a garden variety claim of excusable neglect," *Irwin*, 498 U.S. at 96, 111 S. Ct. at 458, we agree with both the parties and those courts that have found, in certain rare cases, attorney illness to be the extraordinary circumstances in which the doctrine of equitable tolling should apply. It is clear, however, that this is a doctrine that should be used only sparingly. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S. Ct. 2061, 2072 (2002); *Irwin*, 498 U.S. at 96, 111 S. Ct. at 457. "[T]he principles of equitable tolling . . . do not extend to . . . a garden variety claim of excusable neglect." *Irwin*, 498 U.S. at 96, 111 S. Ct. at 458.

¶17 The trial court determined "that as a matter of law under the unusual facts and circumstances of this case, there is no excusable neglect." We interpret this ruling to mean the court correctly decided that equitable tolling is available based on an attorney's disability, but further found the doctrine unavailable on these facts. Thus, the court's ruling invokes the third situation described in *Belot*, 490 F.3d at 206-07, which we will review for an abuse of discretion.

¶18 McCloud's counsel's affidavit provides significant detail about the events he asserts caused him to fail to file the complaint within the one-year limitations period. His affidavit, however, does not suggest he was so disabled during this time that he could not have taken steps to ensure his client was protected. For example, he was able, despite several surgeries and his wife's disability, to relocate his mother from Phoenix to Tucson and arrange for the care of his brother. And, following his mother's death, he was able to "handle the arrangements and the winding up of her financial affairs." Even assuming these

12

events "prevented [him] from being able to properly concentrate on [his] work," as he asserts, he apparently did not attempt to contact his backup attorney for assistance. And he stated in his affidavit that he did not expect the backup attorney to "learn the various statute of limitation requirements," but instead planned to "guide [the backup attorney] through the process on [his] files." There is no evidence McCloud's attorney ever attempted to provide such guidance, and no evidence he lacked the opportunity.

¶19        We sympathize with McCloud's counsel and can understand why these events may have caused him to neglect his client's case. The trial court did not abuse its discretion, however, in concluding they were insufficient to permit tolling in the absence of any effort by McCloud's counsel to mitigate or address, despite opportunities to do so, the effect these events had on his practice. In the cases we have reviewed, courts have only applied the doctrine of equitable tolling where the attorney had suffered a significant incapacitating disability. *See Cantrell*, 60 F.3d at 1180 n.1 (mental illness resulting in attorney's "remov[al] from the active practice of law"); *Doherty*, 16 F.3d at 1394 (attorney unable to work and "was in his home or the hospital until his death"); *Fogg*, 465 F. Supp. 2d at 346 (attorney suffered stroke and "progressively debilitating illness" resulting in death); *Lewis*, 220 Cal. Rptr. at 595 (attorney struck by automobile, resulting in ten days of unconsciousness, including date of filing deadline). The disability suffered by McCloud's attorney, even if we view its combined effects with the illness of his wife and death of two family members, is not comparable with the near-total disability suffered by the attorneys in the cases we have examined.

13

¶20 McCloud also points to the fact that her attorney had surgery the day before the limitations period expired and was convalescing and "unable to work" the following day. Her attorney's affidavit, however, does not state whether the surgery was due to an emergency or if he had prior notice of the surgery and could have taken some steps to protect his client. Evidence his surgery had been unexpected might have supported equitably tolling the limitations period. *See Lewis*, 220 Cal. Rptr. at 595. In the absence of such evidence, however, the trial court was not required to do so. Thus, for the reasons stated above, we conclude McCloud has not demonstrated the trial court abused its discretion in failing to find "extraordinary circumstances" that would warrant tolling of the limitations period. *Alvarez-Machain*, 107 F.3d at 701; *see also Irwin*, 498 U.S. at 96, 111 S. Ct. at 457-58. Thus, the trial court did not abuse its discretion by declining to apply the doctrine of equitable tolling in these circumstances. *See Belot*, 490 F.3d at 207-08.

Course and Scope of Employment

¶21 McCloud also argues her claim against Kimbro as an individual should be governed by the two-year statute of limitations, A.R.S. § 12-542, because a jury could conclude Kimbro was not acting in the course and scope of his employment when he struck McCloud's vehicle.[3] As noted above, a one-year limitations period applies to claims against public entities and employees. *See* § 12-821. A personal injury claim against a private person or entity, however, is governed by the two-year statute of limitations. *See* § 12-542.

---

[3]Although McCloud made this argument below, the trial court did not address it in granting the state's motion to dismiss.

Thus, unless McCloud's claim against Kimbro as a private person is governed by § 12-821, it was timely filed. "In reviewing the trial court's decision to dismiss for failure to state a claim, we assume as true the facts alleged in the complaint and affirm the dismissal only if, as a matter of law, the plaintiff would not be entitled to relief on any interpretation of those facts." *Doe ex rel. Doe v. State*, 200 Ariz. 174, ¶ 2, 24 P.3d 1269, 1270 (2001).

¶22        Although the parties apparently assume that the one-year statute of limitations in § 12-821 applies to a claim against a public employee only when that employee acts in the course and scope of his or her employment, the statute's language contains no such restriction.[4] Indeed, our legislature removed specific language to that effect when it amended the statute in 1994. 1994 Ariz. Sess. Laws, ch. 162, § 1. As we explain, however, to interpret § 12-821 to apply to claims against a public employee who was not acting in the scope of his or her employment at the time of the actionable event would be contrary to the legislature's intent and inconsistent with the interpretation of related statutes. *See Bridgestone/Firestone N. Am. Tire, L.L.C. v. A.P.S. Rent-A-Car & Leasing Inc.*, 207 Ariz. 502, ¶ 15, 88 P.3d 572, 576 (App. 2004) (primary goal of statutory interpretation "'is to discern and give effect to legislative intent.'"), *quoting State v. Kearney*, 206 Ariz. 547, ¶ 5, 81 P.3d 338, 340 (App. 2003); *Ruth Fisher Elementary Sch. Dist. v. Buckeye Union High Sch. Dist.*, 202 Ariz. 107, ¶ 12, 41 P.3d 645, 648 (App. 2002) ("When we interpret the meaning and application of related statutes, we keep in mind that '[i]f reasonably practical,

---

[4]McCloud asserts that "[s]imply being a public employee does not trigger the one year statute of limitations," but cites no authority in support of her position. The state does not discuss this issue.

15

a statute should be explained in conjunction with other statutes to the end that they may be harmonious and consistent.'"), *quoting State ex rel. Larson v. Farley*, 106 Ariz. 119, 122, 471 P.2d 731, 734 (1970) (alteration in *Ruth Fisher*).

¶23        An earlier version of § 12-821, enacted in 1984, similarly contained no explicit language limiting it to claims based on the acts of a public employee in the scope of his or her employment.  1984 Ariz. Sess. Laws, ch. 285, § 5.  Then, as now, a "public employee" includes an "officer, director, employee or servant, whether or not compensated or part time, who is authorized to perform any act or service," § 12-820(1), of any "public entity," § 12-820(5).  In *Johnson v. Superior Court*, 158 Ariz. 507, 509 n.1, 763 P.2d 1382, 1384 n.1 (App. 1988), we determined that, because the term "public employee" refers to "a person authorized to act," "the statutes [governing claims against public entities or employees] are applicable only in situations where public employees have acted in the scope of employment."  Thus, under *Johnson*, the scope of employment language need not be present in § 12-821 because that restriction is encompassed by the definitions of "employee" and "public employee" in § 12-820(1) and (5).

¶24        The legislature modified § 12-821 in 1993, eliminating the notice of claim requirement and stating the one-year statute of limitations applied only to personal injury claims "involving acts that are alleged to have occurred within the scope of the public employee's employment." 1993 Ariz. Sess. Laws, ch. 90, § 8.  In 1994, the legislature, without comment or explanation, removed the scope of employment language.  1994 Ariz.

16

Sess. Laws, ch. 162, § 1. The legislature's alteration of § 12-821, however, does not suggest our interpretation of § 12-820's definitions in *Johnson* was error.

¶25 Furthermore, by the same bill that modified § 12-821 in 1994, the legislature enacted the notice of claim statute, § 12-821.01, which also contains no reference to the public employee's scope of employment. 1994 Ariz. Sess. Laws, ch. 162, § 2. The notice of claim statute has consistently been applied only to claims arising out of acts by public employees in the scope of their employment. *See, e.g., Salerno v. Espinoza*, 210 Ariz. 586, ¶ 11, 115 P.3d 626, 629 (App. 2005); *Crum v. Superior Court*, 186 Ariz. 351, 352-53, 922 P.2d 316, 317-18 (App. 1996).[5] To interpret § 12-821 to encompass acts outside an employee's scope of employment would be inconsistent with those decisions. *See Ruth Fisher*, 202 Ariz. 107, ¶ 12, 41 P.3d at 648.

¶26 Moreover, although the legislature removed the scope of employment language from § 12-821, 1994 Ariz. Sess. Laws, ch. 162, § 1, the legislative history of that revision strongly suggests the legislature intended for that restriction to remain. The Senate's "final revised" fact sheet for that bill, S.B. 1284, states that the bill is to "[p]rovide[] for a one year statute of limitation on all actions brought against a public entity or public employee *when acting in his capacity as a public employee.*" (Emphasis added.) Although the legislative history does not explain why the scope of employment language was removed from § 12-

_____

[5]Admittedly neither *Salerno* nor *Crum* contains any analysis of this issue. In *Crum*, Division One of this court relied on *Johnson v. Superior Court*, 158 Ariz. 507, 763 P.2d 1382 (App. 1988). 186 Ariz. at 352, 922 P.2d at 317. In *Salerno*, Division One relied on *Crum*. 210 Ariz. at 588, 115 P.3d at 628.

821, the fact sheet evidences a clear legislative intent for that statute to apply only to public employees acting in the scope of their employment. *See Ardestani v. I.N.S.*, 502 U.S. 129, 135-36, 112 S. Ct. 515, 520 (1991) (clearly expressed contrary legislative intent rebuts presumption that plain language of statute best indicator of legislative intent); *see also City of Tucson v. Clear Channel Outdoor, Inc.*, 209 Ariz. 544, ¶ 68, 105 P.3d 1163, 1178 (2005) (consideration of legislative fact sheets appropriate to determine legislative intent).

**¶27** For the reasons stated above, we conclude, despite the legislature's decision to remove language explicitly limiting § 12-821 to acts within an employee's scope of employment, the statute can only be reasonably interpreted to solely encompass such actions. Thus, McCloud's claim against Kimbro is timely only if Kimbro was not acting within the scope of his employment at the time of the accident. Unlike in its ruling on equitable estoppel, the trial court did not consider any matters outside the pleadings related to this issue when it granted the state's motion to dismiss. *See* Ariz. R. Civ. P. 12(b)(6). We therefore "assume as true the facts alleged in the complaint and affirm the dismissal only if, as a matter of law, the plaintiff would not be entitled to relief on any interpretation of those facts." *Doe ex rel. Doe*, 200 Ariz. 174, ¶ 2, 24 P.3d at 1270.

**¶28** In her complaint, McCloud alleged Kimbro was an "officer employed by DPS" and had been driving his "State of Arizona motor vehicle" when he struck her while he was "searching for a restaurant on his lunch break." The state argues these facts conclusively establish Kimbro was acting in the scope of his employment at the time of the accident. We disagree.

18

¶29　　　　An employee's "[c]onduct falls within the scope [of employment] if it is the kind the employee is employed to perform, it occurs within the authorized time and space limits, and furthers the employer's business even if the employer has expressly forbidden it." *Baker ex rel. Hall Brake Supply, Inc. v. Stewart Title & Trust of Phoenix, Inc.*, 197 Ariz. 535, ¶ 17, 5 P.3d 249, 254 (App. 2000). "Whether an employee's tort is within the scope of employment is generally a question of fact. It is a question of law, however, if the undisputed facts indicate that the conduct was clearly outside the scope of employment." *Smith v. Am. Express Travel Related Servs. Co.*, 179 Ariz. 131, 136, 876 P.2d 1166, 1171 (App. 1994) (internal citations omitted).

¶30　　　　That Kimbro was on his lunch break does not resolve the question whether he was acting in the scope of his employment. *See* Restatement (Second) of Agency § 229 cmt. e (1958) ("The fact that the act is done at an unauthorized place or time or is actuated by a purpose not to serve the master indicates that the act is not within the scope of the employment."); *see also id.* §§ 233, 234; Restatement (Third) of Agency § 7.07(2) ("An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer."). Just because Kimbro was driving a State of Arizona vehicle does not necessarily mean he had been acting within the scope of his employment. An employee could deviate from the scope of employment using an employer-provided vehicle as readily as when using a personal vehicle. *Cf. Smithey v. Hansberger*, 189 Ariz. 103, 107, 938 P.2d 498, 502 (App. 1996) ("employer's conveyance exception" to typical rule that "when an employee is injured

19

going to or coming from his work place, the accident and resulting injuries do not arise out of or occur in the course and scope of employment" depends on whether "travel time appears to benefit the employer").

¶31    We also find unavailing the state's argument based on A.R.S. § 41-1743 that Kimbro was necessarily acting within the scope of his employment because he was "authorized, if not duty-bound, to intervene if he had witnessed a crime, accident, or civil traffic violation while on his way to or even while eating lunch."  Adopting the state's position would mean that an off-duty police officer would always be acting within the scope of his or her employment merely because some potential duty to act could arise, regardless of the attendant circumstances.

¶32    Additionally, the state's reliance on workers' compensation cases from a variety of jurisdictions is misplaced.  Workers' compensation statutes are interpreted liberally to protect the injured worker.  *See Schuck & Sons Constr. v. Indus. Comm'n*, 213 Ariz. 74, ¶ 13, 138 P.3d 1201, 1204 (App. 2006) ("We construe the Workers' Compensation Act liberally in order to effectuate its remedial purpose.").  Thus, cases addressing those statutes may construe more broadly the scope of employment of an injured employee than is proper in this context.  *See Throop v. F.E. Young & Co.*, 94 Ariz. 146, 153, 382 P.2d 560, 564 (1963) ("Work[ers'] [c]ompensation cases and cases arising under similar social legislation are not necessarily authority for principles giving rise to common-law liability under the doctrine of respondeat superior."); *but see Ortiz v. Clinton*, 187 Ariz. 294, 298, 928 P.2d 718, 722 (App. 1996) ("principles arising from workers'

compensation cases may also be invoked in *respondeat superior* cases when they are appropriate," particularly when applied to tort action involving exclusive remedy provision of workers' compensation statute). Because the facts pled in McCloud's complaint do not compel the conclusion that Kimbro was acting in the scope of his employment at the time of the accident, the trial court erred in dismissing McCloud's individual claim against Kimbro. *See Doe ex rel. Doe*, 200 Ariz. 174, ¶ 2, 24 P.3d at 1270.

## Disposition

¶33      The trial court's grant of the state's motion to dismiss McCloud's claim against the State of Arizona is affirmed. Its grant of the motion to dismiss McCloud's individual claim against Kimbro is reversed and we remand the case to the trial court for further proceedings consistent with this decision.

_____
J. WILLIAM BRAMMER, JR., Judge

CONCURRING:


_____
JOSEPH W. HOWARD, Presiding Judge


_____
JOHN PELANDER, Chief Judge

21