47 P.3d 1137

John KROMKO, Plaintiff/Appellee/Cross–Appellant,

v.

CITY OF TUCSON, a municipal corporation; James Keene, City Manager, Defendants/Appellants/Cross–Appellees.

No. 2 CA–CV 2002–0064.

Court of Appeals of Arizona, Division 2, Department A.

May 10, 2002.

Redesignated as Opinion June 11, 2002.

Raven & Awerkamp, P.C., by Anne C. Graham–Bergin, Tucson, for Plaintiff/Appellee/Cross-Appellant.

Gabroy, Rollman & Bossé, P.C., by Richard M. Rollman and Richard A. Brown, Tucson, for Defendants/Appellants/Cross-Appellees.

Arizona Center for Law in the Public Interest, by Joy E. Herr–Cardillo, Tucson, for Amicus Curiae Citizens for a Sensible Transportation Solution.

## OPINION

FLÓREZ, Judge.

¶ 1 In accordance with the May 3, 2002, order of this court, the judges of Department A have considered this accelerated appeal and cross-appeal pursuant to Rule 29, Ariz. R.Civ.App.P., 17B A.R.S. We have jurisdiction of this appeal and cross-appeal from the trial court's April 30, 2002, order granting appellee/cross-appellant John Kromko partial injunctive relief, pursuant to A.R.S. § 12–2101(F)(2). Upon consideration of the record, the briefs, including the amicus curiae brief we permitted the Arizona Center for Law in the Public Interest to file and the City's opposition thereto, and oral argument, we vacated the preliminary injunction on May 8, 2002, affirmed the denial of injunctive relief as to those matters that were the subject of Kromko's cross-appeal, and stated that this decision order would follow.

¶ 2 On April 17, 2002, Kromko filed a complaint in Pima County Superior Court seeking a declaration that appellant City of Tucson and its manager, James Keene (joint-

ly referred to as the City), were violating A.R.S. § 9–500.14(A) by disseminating information through various media regarding two propositions that are on the ballot for the City's May 21, 2002, special referendum election: Proposition 400, which is the City of Tucson Transportation Improvement and Traffic Congestion Reduction Plan (the "Transportation Plan"), and Proposition 100, which proposes that the City's charter be amended to increase its business privilege tax by one-half cent in order to generate revenue for the Transportation Plan. Kromko sought to enjoin the City from continuing to disseminate the information, contending it was violating § 9–500.14(A) because the City was not simply educating the public through pamphlets, television announcements, and Internet websites but was advocating a vote in favor of the propositions, using City personnel, equipment, materials, and other resources to do so.

¶ 3 On April 30, 2002, the trial court granted partial relief, enjoining the City from disseminating the Transportation Plan pamphlet, broadcasting a television public service announcement featuring Keene, and displaying three Internet website pages, finding these communications "likely to," "intended to," or "meant to influence the election outcome." The court found, however, that Kromko had not sustained his burden of establishing grounds for an injunction as to the City's Continuous Flow Intersection pamphlet and four other pages of the website. *See Shoen v. Shoen,* 167 Ariz. 58, 804 P.2d 787 (App.1990) (party seeking injunctive relief must show strong likelihood of success at trial on merits, possibility of irreparable harm not remedied by damages if injunction not granted, balance of hardships in party's favor, and public policy favoring injunctive relief). The City appealed and, after the trial court refused the City's request to stay the April 30 order, sought a stay from this court. Although we denied the stay, we accelerated the appeal pursuant to Rule 29; *see also Perini Land and Dev. Co. v. Pima County,* 170 Ariz. 380, 825 P.2d 1 (1992), and

held oral argument on the appeal and subsequently filed cross-appeal on May 8, 2002.

¶ 4 We review a trial court's order granting or denying an injunction for a clear abuse of discretion. *Shoen.* But, because the underlying issues in this case involve matters of statutory interpretation and application, our review is de novo. *State v. Korovkin,,* 202 Ariz. 493, 47 P.3d 1131, (App.,2002) . Consequently, we review the legal issues anew and determine whether the trial court erred as a matter of law and thereby abused its discretion in granting, in part, and denying, in part, Kromko's request for injunctive relief.

¶ 5 We summarily reject the City's challenge of the trial court's rejection of its claim that Kromko's action was barred by the equitable doctrine of laches. The City made it clear at oral argument before this court that it wished to have the merits of the appeal and cross-appeal addressed and essentially abandoned this claim. Moreover, the trial court did not abuse its discretion in rejecting the City's laches argument, given the record before us. We therefore turn to the merits of this case.

¶ 6 Section 9–500.14(A) provides as follows:

A city or town shall not use its personnel, equipment, materials, buildings or other resources for the purpose of influencing the outcomes of elections. Notwithstanding this section, a city or town may distribute informational reports on a proposed bond election as provided in § 35–454. Nothing in this section precludes a city or town from reporting on official actions of the governing body.

At the heart of the appeal and cross-appeal is the following question: precisely what constitutes "influencing the outcomes of elections" for purposes of the statute?

¶ 7 Kromko contends the statute requires the City to present the information in a fair and impartial manner.[1] Kromko insists that the City was, therefore, required to inform the electorate of the negative aspects of the

---

1. We note that at oral argument, Kromko abandoned any argument that the statute must be read literally as precluding the City from providing any information to the public, other than in connection with a bond issue. Kromko conceded that the City may educate the public.

propositions and that it failed to do so, presenting them only in a positive light. As support for his contention, he relied at oral argument on cases cited by the amicus curiae in its brief, primarily *Fairness and Accountability in Insurance Reform v. Greene,* 180 Ariz. 582, 886 P.2d 1338 (1994), and *Arizona Legislative Council v. Howe,* 192 Ariz. 378, 965 P.2d 770 (1998). But these cases do not assist us in interpreting § 9–500.14(A). Rather, they involved statutes applicable to state election ballots and publicity pamphlets, specifically A.R.S. §§ 19–123 and 19–124. Section 19–124(B) requires the legislative council to "prepare and file with the secretary of state an impartial analysis of the provisions of each ballot proposal of a measure or proposed amendment." There is no such language or even similar language in § 9–500.14. From the fact that the legislature worded § 19–124(B) so differently from § 9–500.14, modeling the latter after the Supreme Court's decision in *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), and some of its progeny, we infer that the legislature did not intend that the two statutes be given the same meaning. Had the legislature wanted to make presentation of an impartial analysis a prerequisite to a City's use of its funds and resources to educate the public on a ballot issue, it easily could have done so. A different standard simply must apply to § 9–500.14 than applies to § 19–124.

¶ 8 We note that in a related argument presented at oral argument on appeal, Kromko relied on the recently distributed publicity pamphlet for the upcoming special referendum election[2] as an example of a fair and impartial presentation of the information regarding the propositions. The trial court did not have the benefit of that pamphlet when it decided to grant the injunction, however. It is not, therefore, part of the record on appeal and may not be considered in reviewing the propriety of the trial court's order, although we permitted counsel to use it at oral argument for illustrative purposes. In any event, the pamphlet does not persuade us that the City was required to provide information as presented in the pamphlet because, again, the information that may be presented in the pamphlet is controlled by the election statutes that require a fair and impartial presentation of information on the issues. A.R.S. §§ 19–123; 19–124; 19–141.

¶ 9 The City urges us to construe § 9–500.14 as precluding only the expenditure of funds and use of resources for communications that expressly advocate a particular vote. The City relies significantly on *Buckley,* in which the Supreme Court addressed the constitutionality of certain provisions of the Federal Election Campaign Act of 1971, as amended in 1974, 2 U.S.C. § 431 *et seq.,* which contains language in its disclosure provisions and spending limits similar to the language in § 9–500.14.[3] The City suggests that in order to be considered express advocacy, the communication must use direct terms such as those identified by the Court in *Buckley:* " 'vote for,' 'elect,' 'support,' 'cast your ballot for,' 'Smith for Congress,' 'vote against,' 'defeat,' 'reject.' " 424 U.S. at 44 n. 52, 96 S.Ct. at 647 n. 52, 46 L.Ed.2d at 702 n. 52. We disagree.

¶ 10 First, such a narrow construction of the statute leaves room for great mischief. Application of the statute could be avoided simply by steering clear of the litany of forbidden words, albeit that the message and purpose of the communication may be unequivocal. Additionally, based on language in *Buckley* itself as well as cases decided later, we think there is a second, alternative

2. In City referendum elections, the City prepares and distributes publicity pamphlets in accordance with §§ 19–123 and 19–124. *See* A.R.S. § 19–141(A), (D).

3. Specifically, the Court addressed, inter alia, § 604(e)(1), which provided that "[n]o person may make any expenditure ... relative to a clearly identified candidate during a calendar year" that exceeded a specified amount. It also considered § 434(e), a broader, independent provision, which contained reporting requirements applicable to all persons making political contributions and expenditures, defining the latter two terms "in parallel provisions in terms of the use of money or other valuable assets 'for the purpose of ... influencing' the nomination or election of candidates for federal office." *Buckley,* 424 U.S. at 77, 96 S.Ct. at 662, 46 L.Ed.2d at 720–21, *quoting* § 431(e), (f).

test for determining whether a communication is designed to influence the outcome of an election: express advocacy may be based on communication that, "taken as a whole[,] unambiguously urge[s]" a person to vote in a particular manner. *Schroeder v. Irvine City Council,* 97 Cal.App.4th 174, 118 Cal.Rptr.2d 330, 339 (2002). *See also Federal Election Comm'n v. Furgatch,* 807 F.2d 857 (9th Cir. 1987). The communication "must clearly and unmistakably present a plea for action, and identify the advocated action; it is not express advocacy if reasonable minds could differ as to whether it encourages a vote for or against a candidate or encourages the reader to take some other kind of action." *Schroeder,* 118 Cal.Rptr.2d at 341. We are not suggesting that all factors surrounding the communication, including timing or other circumstances independent of the communication itself, may be considered in determining whether the communication unambiguously urges the electorate to vote in a particular manner. We are cognizant that this is, indeed, the criticism of *Furgatch. See, e.g., Chamber of Commerce of the United States of America v. Moore,* 288 F.3d 187 (5th Cir. 2002); *League of Women Voters of Colo. v. Davidson,* 23 P.3d 1266 (Colo.App.2001); *Washington State Republican Party v. Washington State Public Disclosure Comm'n,* 141 Wash.2d 245, 4 P.3d 808 (2000). Rather, we think the message must be examined within the textual context of the medium used to communicate it.

■ ¶ 11 It is unclear, however, which interpretation the trial court applied in this case. Its comments that the City did not present the opposing view on the propositions suggests that it adopted the "fair presentation" or "impartiality" approach that Kromko has urged us to adopt but which we have rejected. Other parts of the court's order, however, focus distinctly on whether the City attempted to influence the outcome of the election. In any event, as our review is de novo, we apply the correct standard and conclude that "reasonable minds could differ as to whether [the communications at issue]

encourage[ ] a vote for" the propositions. *Schroeder,* 118 Cal.Rptr.2d at 339. Not only are the express words absent, but they provide information regarding the propositions, Tucson's traffic problems, and the solutions proposed by the Plan in such a way that a reasonable person might conclude that the City was educating the public on the issues, albeit in an entirely positive light.[4] But this is not necessarily the same as an unambiguous urging of the electorate to vote in favor of the propositions.

■ ¶ 12 We also reject Kromko's claim that the City has violated his First Amendment rights. It is less than clear whether the trial court directly addressed it. Rather, it appears that the court did so peripherally, concomitant with its discussion of the statute. But the court's reference to *Mountain States Legal Foundation v. Denver School District # 1,* 459 F.Supp. 357 (D.Colo.1978), may well have been a recognition of this independent claim. In any event, it is without merit.

¶ 13 Section 9–500.14 restricts a city's ability to expend public funds precisely in the manner Kromko contends it must in order to avoid violating his First Amendment rights; the statute prevents the City from using such funds to influence the outcome of an election. The statute strikes a balance between the electorate's rights and the City's obligation to inform the public. Moreover, many of the cases Kromko relies on are based on violation of a state statute or regulation rather than the violation of federal constitutional rights, which, as the City points out in its opening brief, is precisely why the court in *Cook v. Baca,* 95 F.Supp.2d 1215 (D.N.M. 2000), *aff'd,* No. 00–2180, 2001 WL 303679, 12 Fed.Appx. 640 (10th Cir.2001) (unpublished), *cert. denied,* —— U.S. ——, 122 S.Ct. 462, 151 L.Ed.2d 379 (2001), rejected a similar constitutional argument. We are not persuaded that the statute, as written, interpreted, and applied, resulted in a violation of Kromko's First Amendment rights.

---

4. We note that earlier versions of the communications at issue contained features that might well have tipped the scale toward an unambiguous urging of a particular vote, including a checked box next to the words "Proposition 400" and "Proposition 100." But the City voluntarily stopped disseminating information in that manner.

504

¶14 Because of our resolution of these issues, we need not address other issues the City raises on appeal. And, having concluded that the trial court erred by issuing the injunction as to the specified items, we necessarily reject Kromko's arguments in his cross-appeal that the trial court erred by denying the injunction as to the remaining items, which the trial court rightly found less offensive of the statute.

¶15 The trial court's order is vacated in part and affirmed in part as set forth in this decision order.

CONCURRING: PHILIP G. ESPINOSA, Chief Judge, and WILLIAM E. DRUKE, Judge.