NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

WHITESTONE SHOPS AT PINNACLE PEAK, L.L.C. a Delaware limited
liability company, *Plaintiff/Appellant*,

*v.*

JADE PALACE, INC., a dissolved Arizona corporation; DAVLEN MEI
and JANE DOE MEI, husband and wife; JOHN DOES I-X, JANE DOES I-
X; ABC PARTNERSHIPS I-X; and XYZ CORPORATIONS OR OTHER
ENTITIES I-X; UNKNOWN HEIRS AND DEVISES OF THE ABOVE-
NAMED DEFENDANTS, IF DECEASED; and DMEI MILLER, LLC, an
Arizona limited liability company, *Defendants/Appellees*.

No. 1 CA-CV 16-0035
FILED 8-22-2017

---

Appeal from the Superior Court in Maricopa County
No.  CV2013-007298
The Honorable John Rea, Judge

**AFFIRMED**

---

COUNSEL

MouerHuston PC, Houston, TX
By Penn C. Huston
*Co-Counsel for Plaintiff/Appellant admitted Pro Hac Vice*

Ballard Spahr LLP, Phoenix
By Joseph A. Kanefield and Chase A. Bales
*Co-Counsel for Plaintiff/Appellant*

Beus Gilbert PLLC, Phoenix
By Franklyn D. Jeans and Cassandra H. Ayers
*Counsel for Defendants/Appellees DMEI Miller and Davlen Mei and Yee Siu*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Jennifer B. Campbell joined.

---

**B R O W N**, Judge:

**¶1** Whitestone Shops at Pinnacle Peak, L.L.C. ("Whitestone") appeals a judgment in favor of Jade Palace, Inc., Davlen Mei, and DMEI Miller, LLC (collectively "DMEI"). Whitestone argues the trial court erred in (1) granting summary judgment on its breach of contract claim, (2) granting a directed verdict on the issue of reasonableness, and (3) denying its request for injunctive relief. For the following reasons, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

**¶2** In 2012, DMEI purchased vacant commercial property located in the City of Scottsdale ("City"), where it intended to build a restaurant ("Restaurant Parcel"). The Restaurant Parcel shares a parking lot with an adjacent shopping center, which Whitestone purchased the same year. In 1999, when the two properties were an undeveloped single parcel, the owner entered an agreement ("Parking Agreement") with the City to address parking requirements for the shopping center. The Parking Agreement stated the shared parking lot would contain no fewer than 305 parking spaces and listed the size of the restaurant to be built on the Restaurant Parcel as "± 6,281" square feet. The Restaurant Parcel later was split off from the shopping center, and in 2004, the then-owners of the two parcels entered an agreement for a reciprocal easement of access and use of the shared parking lot ("Declaration"). In pertinent part, the Declaration provides:

> 2.1  Access and Parking Easement.
>
> Each Owner of a Parcel grants to the other Owner . . . a nonexclusive, perpetual and reciprocal easement in . . . the Easement Areas of the Parcels for purposes of *reasonable* pedestrian and vehicular access, ingress and egress . . . as well as parking in designated parking areas on the Parcels.

2

\*      \*      \*

2.3  <u>Reasonable Use of Easements</u>.

The easements granted herein shall be used and enjoyed by each Owner . . . in such a manner as not to *unreasonably interfere* with . . . the conduct and operations of the business of any other Owner . . . .

(Emphasis added.)  The Declaration incorporated by reference the Parking Agreement.  Whitestone and DMEI, as subsequent owners, are therefore bound by the Parking Agreement and the Declaration (collectively the "Contracts").

¶3         In March 2013, DMEI submitted a site plan to the City's Development Review Board seeking approval for a 9,214 square-foot two-story building ("First Restaurant") on the Restaurant Parcel.  By email dated May 6, Whitestone advised DMEI that if it would reduce the size of the proposed restaurant to a single story of no more than 6,281 square feet, Whitestone would "raise no objection to the reduced size of the restaurant" and would grant DMEI "a temporary construction easement to permit construction access and construction staging in a specified area of the parking lot."  Whitestone's email stated its offer would expire on May 10; the record is not clear whether DMEI responded by that date.  On May 14, Whitestone filed a complaint seeking to enjoin DMEI from developing the Restaurant Parcel and alleging breach of contract, or, alternatively, seeking rescission of the Contracts.  In July, DMEI submitted a revised application to the City requesting approval of a restaurant of 6,280 square feet plus a covered patio of 636 square feet ("Second Restaurant"), which the City eventually approved.

¶4         During the same time frame, Whitestone amended its complaint, seeking (1) a declaratory judgment that the footprint of the building to be developed on the Restaurant Parcel may not exceed ± 6,281 square feet and that no portion of the parking easement may be used for construction access, staging, or storage of construction materials (Count 1); (2) a temporary restraining order, preliminary injunction, and permanent injunction in accordance with the declaratory judgment (Count 2); (3) alternatively, rescission of the Contracts (Count 3); and (4) breach of contract, anticipatory repudiation, and breach of the covenant of good faith and fair dealing (Count 4).

¶5         DMEI later moved for summary judgment on all counts, arguing (1) Whitestone's claims were not ripe and no justiciable issue

3

existed because DMEI did not plan to construct the restaurant for at least two years; (2) Whitestone's claims for declaratory relief were barred by the plain language of the Contracts; (3) Whitestone's requests for injunctive relief were moot because the balance of hardships, injustice, and public policy favored DMEI; and (4) DMEI had not breached the Contracts, anticipatorily or otherwise, or acted in bad faith, and any alleged damages were speculative, remote, and uncertain.

¶6        Following briefing and oral argument, the trial court granted summary judgment in favor of DMEI on Count 3 (rescission) and Count 4 (breach of contract, anticipatory repudiation, and breach of good faith and fair dealing), but denied the motion as to Count 1 (declaratory judgment) and Count 2 (injunction).[1]  The court found that the "dispute is over two matters – the size of the restaurant proposed by [DMEI] and whether the [Declaration] allows any construction related use of the common parking area."  The court explained that as to Counts 1 and 2, the Contracts were ambiguous because the phrase "± 6,281" in the Parking Agreement "clearly contemplates a range" and the Declaration was silent as to construction-related use of the parking area.  The court reasoned, depending upon how the jury decided the Contracts should be interpreted, Count 4 would either be moot (if Whitestone prevailed on its declaratory judgment and injunction claims) or without merit (if DMEI's proposed restaurant design did not violate the Contracts and the Contracts did not bar use of the parking lot for construction purposes).

¶7        A four-day jury trial was held on Count 1 (declaratory judgment) and Count 2 (injunction).  The jury found that although the First Restaurant initially proposed by DMEI exceeded the square-foot specifications in the Parking Agreement, the Second Restaurant did not exceed such specifications, and DMEI was permitted to use the common parking lot for construction staging and storage.

¶8        After Whitestone unsuccessfully moved for a new trial, the trial court found that DMEI was the prevailing party, awarding attorney fees and costs in the amount of $230,011.54.  The court entered final judgment and Whitestone timely appealed.

---

[1]        On appeal, Whitestone does not argue the trial court erred in granting summary judgment in favor of DMEI on its rescission claim (Count 3).  Thus, we do not address it.

## DISCUSSION

### A.    Summary Judgment on Breach of Contract Claim (Count 4)

¶9        Whitestone argues the trial court erred in granting summary judgment on its breach of contract claim.  Specifically, it contends DMEI breached the Parking Agreement because the First Restaurant plan submitted to the City exceeded the square-foot specifications.  In support of its claim, Whitestone focuses on the jury's verdict that the First Restaurant proposal exceeded the Parking Agreement's square-foot limitation, asserting the same finding would have allowed Whitestone to prevail on its breach of contract claim at trial and recover as damages the consultation and legal fees incurred in challenging the First Restaurant development application.

¶10        Entry of summary judgment is proper "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."  Ariz. R. Civ. P. 56(a).  We determine *de novo* whether any genuine issue of material fact exists and whether the trial court erred in applying the law, and we will uphold the court's ruling if correct for any reason.  *Logerquist v. Danforth*, 188 Ariz. 16, 18 (App. 1996).  We construe the evidence and reasonable inferences in the light most favorable to the non-moving party.  *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 201 Ariz. 474, 482, ¶ 13 (2002).

¶11        To avoid summary judgment on its breach of contract claim, Whitestone had the burden of providing sufficient evidence to establish a genuine dispute of material fact concerning the existence of a contract, its breach, and resulting damages.  *See Goodman v. Physical Res. Eng'g, Inc.*, 229 Ariz. 25, 28, ¶ 7 (App. 2011).  Whitestone's amended complaint, however, alleged only a prospective breach – "*if* [DMEI] develops a building in excess of [± 6281] square feet or fails to develop the area of the [Restaurant Parcel] for purposes other than parking and access, *it will have breached* its obligations as successor under the Parking Declaration and Parking Agreement."  (Emphasis added.)  Whitestone cites no authority supporting the proposition that a party may be assessed damages for a future breach of a property development.  Because Whitestone alleged only a prospective breach, the claim fails as a matter of law.[2] *See City of Tucson v. Superior Court*,

---

[2]        Whitestone's breach of contract claim, as amended, also included general allegations of anticipatory repudiation and breach of the covenant

116 Ariz. 322, 324 (App. 1977) ("[T]o state a claim in contract, the complaint must disclose an agreement, a right thereunder in the party seeking relief and a breach by the defendant.")

**¶12** The practical effect of the jury's verdict is that DMEI would be in breach of the Parking Agreement if DMEI proceeded with the development outlined in the First Restaurant submission to the City; the jury's verdict did not establish that DMEI breached the Parking Agreement simply because it submitted the development proposal. *Cf. Canyon del Rio Inv'rs, L.L.C. v. City of Flagstaff*, 227 Ariz. 336, 341, ¶ 18 (App. 2011) (Arizona's declaratory judgment act allows a court to determine legal rights "before the occurrence of a breach or injury necessary to sustain a coercive action (one seeking damages or injunctive relief)."); *Elkins v. Vana*, 25 Ariz. App. 122, 126 (1975) ("An action for a declaratory judgment is intended to serve as an instrument of preventive justice . . . to permit adjudication of rights or status without the necessity of a prior breach."). The trial court did not err in granting summary judgment on Whitestone's breach of contract claim.[3]

---

of good faith and fair dealing. In its reply brief, Whitestone contends its claim was not limited to a prospective breach because the amended complaint used the present tense ("*is* a material breach because it *destroys* the entire purpose of the cross easement"). (Emphasis added.) At most, those allegations might have supported Whitestone's anticipatory repudiation and good faith and fair dealing claims. Because Whitestone failed to raise any argument as to either claim in its opening brief, it waived those arguments. *See City of Tucson v. Clear Channel Outdoor, Inc.*, 218 Ariz. 172, 195, ¶ 88 (App. 2008) (noting that an appellate court will not address issues or arguments waived by party's failure to develop them adequately); *see also* ARCAP 13(a)(7)(A) (stating that the opening brief must include an "[a]ppellant's contentions concerning each issue presented for review, with supporting reasons for each contention, and with citations of legal authorities and appropriate references to the portions of the record on which the appellant relies").

[3] Whitestone's claim also fails because the amended complaint did not allege a breach or damages arising from DMEI's submittal of a development application for the First Restaurant. DMEI submitted plans for the First Restaurant in March 2013 and Whitestone filed its original complaint in May 2013. DMEI then submitted the Second Restaurant application in July 2013, effectively revoking its submission concerning the First Restaurant.

## B.     Denial of Proposed Verdict Forms

¶13        Whitestone argues it proved that both restaurants proposed by DMEI would breach the provisions in the Declaration that limit the parties' use of parking to what is "reasonable."  It argues that although the trial court recognized the claim presented triable issues when it denied DMEI's summary judgment motion, the court later erred by granting judgment as a matter of law in favor of DMEI.

¶14        As an initial matter, Whitestone alleged no "reasonableness" claim in its complaint or amended complaint.  However, because Whitestone raised the reasonableness of the possible parking demands for both proposed restaurants in the joint pretrial statement and it was tried without objection, DMEI impliedly consented to the trial court's consideration of the claim.  *See* Ariz. R. Civ. P. 15(b)(2) ("When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if it had been raised in the pleadings."); *see also Elec. Adver., Inc. v. Sakato*, 94 Ariz. 68, 71 (1963) ("When evidence is presented at trial which presents a new o[r] different theory from that alleged in the pleadings, and the adverse party does not object to the introduction thereof, that issue is then tried by implied consent."). Nevertheless, Whitestone has not shown it is entitled to a new trial.

¶15        Whitestone argues the trial court effectively entered judgment in favor of DMEI as a matter of law when it declined to give verdict forms to the jury that would have allowed it to find that the restaurants violated the parking restrictions in the Declaration.  "Failure to give a requested verdict form is not reversible error unless the omission was prejudicial to the moving party." *Lohmeier v. Hammer*, 214 Ariz. 57, 61-62, ¶ 13 (App. 2006) (citing *State v. Garcia*, 102 Ariz. 468, 471 (1967)).  Prejudice "will not be presumed but must affirmatively appear from the record." *Walters v. First Fed. Sav. & Loan Ass'n*, 131 Ariz. 321, 326 (1982).

¶16        As pertinent here, the joint pretrial statement included Whitestone's contention that DMEI's restaurant submissions to the City breached the Declaration "because the planned restaurant unreasonably interfered with [Whitestone's] operations on the Shopping Center Parcel."

---

Thus, any alleged damages Whitestone incurred based on the First Restaurant would have accrued no later than July 2013.  Whitestone did not allege a breach and resulting present damages relating to the First Restaurant application in its amended complaint, nor did it seek any further amendment to add such an allegation.

At trial, the crux of testimony from Whitestone's representatives revealed that Whitestone sought to constrain DMEI's construction of a restaurant according to Whitestone's objectives, not based on what the Contracts allowed DMEI to build. For example, Christine Mastandrea, Vice President of Corporate Strategy at Whitestone, testified that if DMEI constructed the planned restaurant, DMEI would either need to add more parking spaces on its own property (she did not know how many) or reduce the size of the restaurant to under 6280 square feet. She reasoned that otherwise, "at some point it's going to impact other users in the [shopping center]. And the land that [it] is using, the parking, is on Whitestone's land." Likewise, Daniel Kovacevic, Regional Vice President for Whitestone, testified that if DMEI were to build a smaller restaurant, "maybe a 4,000-square-foot size restaurant . . . more of a quick-service type restaurant," then there would be adequate parking for everyone.

¶17        As noted, *supra* ¶ 2, the Declaration provides a reciprocal easement for "reasonable" access and parking, which is to be used "in such a manner as not to unreasonably interfere with" each other party. On the third day of trial, Whitestone filed a bench brief arguing it had presented extensive evidence showing how the restaurant might interfere with others' use of parking on the property in violation of the Declaration and, thus, the jury should decide if the "proposed restaurants violate the Declaration." Whitestone then requested proposed verdict forms that would have directed the jury to decide whether the First Restaurant and/or the Second Restaurant violate the "reasonableness requirement in sections 2.1 and 2.3 of the [Declaration]." Addressing the proposed forms, the court engaged in the following exchange with counsel for Whitestone:

> THE COURT: Okay. First, you have to show where in the [D]eclaration you get to say what [DMEI does] with their property.
>
> MR. CLARK (Whitestone's counsel): In the [D]eclaration.
>
> THE COURT: So what you're saying is that a year from now if [DMEI] decides [a different restaurant in the shopping center] is way [too] successful and is using [an] unfair share of the parking, [it] can file a lawsuit to seek a declaration to say they have to take 200 square feet off their restaurant.
>
> MR. HUSTON (Whitestone's counsel): [DMEI] can file a lawsuit that says that [a different restaurant is] violating the easement. Yes, absolutely.

THE COURT: Right. But at that point [DMEI would] know how much is used and how much. I mean, there could be a lot of ways that a 6280 square foot restaurant does not pose an unreasonable burden on the parking.

MR. CLARK: We're only seeking a declaration as to this 6,280 square foot restaurant and the 10,000.

THE COURT: *You don't get to tell them what to do there. You don't get to tell them they have to do a takeout restaurant. What you can do is if there is an unreasonable parking burden, you can tell them they have to do something to cure that unreasonable parking burden, but you can't tell them . . . you got to take 2,000 square foot off their property or do business in a different way.*

MR. CLARK: We believe that the evidence shows . . . that the restaurant as proposed both the 6,000 square foot plus patio and 10,000 square foot restaurant do impose an unreasonable burden on the party.

THE COURT: Well, how can that be when they don't have any cars parking there at all right now?

MR. CLARK: Because the evidence shows that that is what will happen with this restaurant.

THE COURT: What if [DMEI] finds offsite parking and hires valets?

MR. HUSTON: There's been no evidence that that's possible or doable. That would have been probative evidence if they had introduced it. But the record, as it exists right now . . . supports an instruction to the jury on whether the proposed restaurant complies with the [D]eclaration.

THE COURT: No. *The [D]eclaration declares what [DMEI] can do in the shared common area, not what they can do on their property.* If what they are doing on their property poses an unreasonable burden on the shared parking area, you can tell them they have to stop posing an unreasonable burden on the shared parking, and at that point, they have to decide how to do that. I mean, *you don't get to tell them how to run their business. Nothing in the [D]eclaration gives you that right*. At this

point, it's pure speculation as to whether this restaurant will pose an undue burden on the parking area.

MR. HUSTON: I don't believe that it is. . . . [T]he evidence that was presented at trial would support a conclusion by the jury that it will unreasonably interfere . . . .

THE COURT: I think for two reasons. One is a matter . . . based on the evidence and the other is based on a matter of law that the requested verdict forms on reasonableness will not be given. One is that *the [D]eclarations themselves don't give the plaintiff any right to impose restrictions on what is done on [the Restaurant Parcel]*, and as a matter of fact, the evidence is purely speculative as to what the parking requirements will be of that building.

(Emphasis added.)

¶18        The trial court did not abuse its discretion in interpreting Whitestone's proposed jury verdict forms as a question of whether Whitestone had the power under the Declaration to unilaterally decide that the Declaration barred both proposed restaurants. Consistent with the trial court's explanation of its ruling, the plain language of the Declaration provides for reasonable use of the shared parking area. The reasonableness of a potential use cannot be determined until the use actually exists, and nothing in the record indicates that as of the date of trial, DMEI had used the shared parking area for any purpose, much less an unreasonable one. Moreover, simply because the parties disputed whether a future restaurant might unreasonably burden the parking lot did not establish an ambiguity in the Declaration that was required to be submitted to the jury. *See Grossman v. Hatley*, 21 Ariz. App. 581, 585 (1974) ("Whether a contract is ambiguous or uncertain is a question of law and the mere fact that the parties disagree as to the meaning of its terms does not, in and of itself, establish its ambiguity."). Even if the Declaration's reference to reasonableness might require interpretation, in the absence of facts concerning the size and nature of the restaurant actually built, and its actual parking demands, the question Whitestone wanted the court to ask the jury to decide was a matter of pure speculation. Thus, the court did not err in rejecting Whitestone's proposed verdict forms.

## C.        Denial of Injunction on First Restaurant (Count 2)

¶19        Whitestone argues the trial court erred in denying its request for an injunction prohibiting DMEI from building the First Restaurant.

10

Whitestone contends the injunction was consistent with the jury's finding on Count 1, and the court improperly denied the request when it entered DMEI's proposed form of judgment as final.

**¶20**        "We review a trial court's order granting or denying an injunction for a clear abuse of discretion." *Kromko v. City of Tucson*, 202 Ariz. 499, 501, ¶ 4 (App. 2002).  A court abuses its discretion when it commits an error of law or fails to consider evidence in reaching a discretionary conclusion or, if upon review, "the record fails to provide substantial evidence to support the trial court's finding." *Flying Diamond Airpark, LLC v. Meinberg*, 215 Ariz. 44, 50, ¶ 27 (App. 2007).

**¶21**        Whitestone has failed to establish that an injunction is appropriate because there is no evidence DMEI has any intention of renewing its plans for the First Restaurant.  Thus, the trial court did not abuse its discretion in declining to grant an injunction.

## D.    Attorney Fees

**¶22**        Without citation to authority or any analysis of the record, Whitestone requests an award of fees and costs in all trial proceedings under Arizona Revised Statutes ("A.R.S.") section 12-341.01 and the Declaration, asserting it was the prevailing party.  In awarding attorney fees and costs to DMEI, and denying Whitestone's corresponding request, the trial court reasoned as follows:

> The Court rejects [Whitestone's] deconstruction of the case.  The case went to trial because [Whitestone] sought to prevent [DMEI] from constructing the building proposed and approved by the City of Scottsdale.  [Whitestone] sought to prevent [DMEI] from using any of the common parking area owned by Whitestone for any construction activity.  [Whitestone] sought even stronger restrictions on [DMEI's] ability to use and conduct business on the [Restaurant Parcel] but that effort was rejected as a matter of law by the Court.  [Whitestone] had the ability to dismiss this case at any time and chose to go to trial.  [Whitestone] lost in every meaningful way.

Based on the jury verdicts, and the entire record, the court did not abuse its discretion in finding that DMEI, and not Whitestone, was the prevailing party at trial and thus eligible for a fee award.  *See Sanborn v. Brooker & Wake Prop. Mgmt., Inc.*, 178 Ariz. 425, 430 (App. 1994) (stating that a determination of prevailing party for "purposes of awarding attorneys' fees

11

is within the sole discretion of the trial court, and will not be disturbed on appeal if any reasonable basis exists for it").

**¶23** Additionally, both parties request attorney fees and costs incurred on appeal pursuant to A.R.S. § 12-341.01(A), which gives a court discretion to award reasonable attorney fees to a prevailing party "[i]n any contested action arising out of a contract." In the exercise of our discretion, as DMEI is the prevailing party on appeal, we award DMEI its taxable costs under § 12-341 and its reasonable attorney fees under § 12-341.01 incurred on appeal upon DMEI's compliance with ARCAP 21.

### CONCLUSION

**¶24** Based on the foregoing, we affirm the trial court's judgment.



AMY M. WOOD • Clerk of the Court
FILED: AA